UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Kimberly Renaud and Randy Smith, | ) |
| Plaintiffs | ) |
| v. | ) C.A. No. |
| United States of America, and Jacob Rachlin, MD, | ) |
| Defendants | ) |

## COMPLAINT AND JURY DEMAND

### Introduction

1. Plaintiffs, Kimberly Renaud and Randy Smith, by and through their counsel, Bergstresser & Pollock, PC, bring this is action for negligence, lack of informed consent and violation of the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* alleging medical malpractice and loss of consortium arising out of the acts and omissions of employees of the United States of America

### Parties, Jurisdiction & Venue

2. Plaintiffs, Kimberly Renaud and Randy Smith, reside in Sturbridge, Worcester County, Massachusetts. Plaintiff Kimberly Renaud is a disabled Navy Veteran who is entitled to and was provided medical treatment at the VA Boston Healthcare System.

3. Jacob Rachlin, MD is a physician holding himself out as a specialist in neurosurgery with a principal place of business located at 1101 Beacon Street, Suite 1 W, Brookline, Massachusetts.

4. At all times described herein Dr. Rachlin was an employee, agent and/or servant of the United States of America, acting within the scope of said employment and/or agency.

5. Defendant, United States of America, is the employer of certain physicians and medical professionals who provided treatment to plaintiff in their capacity as employees of the VA Boston Healthcare System, operated by the Department of Veterans Affairs, which is a department or agency of the United States government within the meaning of 28 U.S.C. § 1346(b) and § 2671 *et seq.*

6. Pursuant to 28 U.S.C. § 1346(b), the District Court has exclusive, original jurisdiction over the Federal Tort Claims Act Claims asserted herein.

7. An administrative claim was properly presented to the U.S. Department of Veterans Affairs on or before March 8, 2022 in the form of a presentment letter and a Form 95, which are attached hereto as Exhibit 1.  The contents of both are incorporated by reference.

8. The U.S. Department of Veterans Affairs has not made any substantive response to the administrative claim.

9. Pursuant to 28 U.S.C. § 1367, the District Court has supplemental jurisdiction over the claims against the other defendants.

10. Venue is proper pursuant to 28 U.S.C. §1391(3e) in that the plaintiff resides in this District and the defendant is an employee of the United States.

## Factual Background

11. In June 2020, Kimberly Renaud began experiencing bilateral numbness in her hands and feet.

12. The symptoms progressed and in August 2020, the pain became severe, extending into her arms and legs.

13. Imaging showed cervical spondylosis with severe spinal cord compression at C6-7 with increased T2 signal in the cord and moderate spinal cord compression about the C4-5 and C5-6 levels.

14. Ms. Renaud received care through the VA Boston Healthcare System.

15. Jacob Rachlin, MD, an employee and agent of the VA Boston Healthcare System was her neurosurgeon among other providers.

16. Dr. Rachlin was responsible for treating Ms. Renaud and also responsible for overseeing the nurse practitioners who treated her.

17. Dr. Rachlin recommended a three-level anterior cervical discectomy and fusion at C4-5, C5-6, C6-7.

18. On 09/15/20, Dr. Rachlin performed the procedure, using a Stryker Spine AERO®-C Cervical Cage at C4-5, C5-6, C6-7.

19. The FDA literature and approval related to the Stryker Spine AERO®-C Cervical Cage, only approves its use at one level.

20. Following the procedure, Mr. Renaud appreciated new right sided weakness and worsening left leg weakness.

21. On 09/11/20 and 09/12/20 x-rays noted one of the s wing arms may have fractured, but the instrumentation was well seated and had good alignment.

22. Despite ongoing functional deficits, on 09/15/20, Ms. Renaud was transferred to inpatient rehabilitation at the West Roxbury VA where she remained until 09/23/20.

23. A CT on 09/18/20 showed post-surgical changes at C4-C5 through C6-C7 and abnormal angulation with posterior tilting of C6-C7 intervertebral spacer device, but no intervention occurred.

24. On 09/23/20 Ms. Renaud was treated for a UTI and her complaints of urinary incontinence were ascribed to that when in fact her incontinence was being caused by the failed hardware from the procedure.

25. Ms. Renaud also experienced and complained of numbness in her hands and difficulty chewing and swallowing, all of which was being caused by the failed hardware from the procedure.

26. On 09/29/20, Ms. Renaud presented to the West Roxbury VA Emergency Department and reported having urinary and bowel incontinence and complaints of left face, arm, leg and buttock numbness, which was not properly ascribed to her recent surgical procedure and the failed hardware.

27. On 10/07/20, Ms. Renaud she reported persistent left leg numbness when she was seen for her one month follow up by Dr. Rachlin.

28. Ms. Renaud was admitted to the VA on 10/13/20 with complaints of incontinence and experienced fecal incontinence when being moved from the ED along with having the urge to urinate without actually having to, which was concerning for cord compression.

29. Plain films were done which showed C4-5 and C5-6 implants in good position but it was hard to visualize the C6-7 level. It was determined that no surgical intervention was warranted at that time as they believed the left leg numbness was unrelated to the cervical spondylosis and she was discharged on 10/17/20. During this admission Ms. Renaud had another fall related to her leg numbness.

30. Ms. Renaud sought a second opinion at Massachusetts General Hospital for her new and persistent symptoms and on 11/3/20 John H. Shin, MD determined that surgery was urgent as the fusion negligently performed by Dr. Rachlin had failed, requiring a two part procedure.

31. On 11/5/20, Dr. Shin performed an anterior cervical corpectomy at C5-C6-C7 and it was noted that there was a clear mechanical failure of all interbody devices. Decompression

was also performed and there was clear deformity and indentation of the thecal sac from the repulsed nature of the vertebral body.

32. On 11/6/20, Dr. Shin went on to perform the posterior cervical thoracic c instrumented fusion from C2-T2 with cervical decompression from C4-C7.

33. Ms. Renaud was discharged on 11/12/20 with home health services, but returned to MGH on 11/17/20 due to aspiration pneumonia resulting from her difficulty swallowing. Imaging showed an immobile right vocal fold in the setting of multiple cervical and thoracic spinal surgeries.

34. On 11/21/20 Ms. Renaud underwent a percutaneous endoscopic gastrostomy surgical procedure so that she could obtain the appropriate nutrients without aspirating over the next several months. Although Ms. Renaud's PEG tube was removed on 03/01/2021, she continues to have difficulty eating solid foods and taking pills without choking.

35. Despite Dr. Shin's two-part procedure removing the improper and failed hardware used by Dr. Rachlin, Ms. Renaud continued to suffer from ongoing neck pain radiating to her suboccipital region and up to the vertex, longstanding numbness in her left leg and occasional left leg giving way.

36. On 06/30/21, Dr. Shin performed another surgery to address Ms. Renaud's pseudarthrosis after fusion, which included placement of new C2 pedicle screws, C2 translaminar screw into left lamina, and re-fusion C2-T4 also related to the negligent use of the AERO – C Cervical Cage System during Ms. Renaud 09/10/20 surgery.

37. Each of the providers that cared for Ms. Renaud through the VA Boston Healthcare System, including but not limited to Dr. Rachlin, departed from the standard of care when they chose to use the Stryker Spine AERO®-C Cervical Cage for Ms. Renaud's C4-5, C5-6, C6-7 anterior cervical discectomy and fusion. Using this device is ill advised at contiguous levels. It is appropriately used only at one level and in fact is only approved by the FDA for use at one level.

38. Dr. Rachlin and supporting staff departed from not only the standard of care when using this device on Ms. Renaud's multi-level discectomy and fusion, but also departed from the approved use by the FDA.

39. Dr. Rachlin and supporting staff also departed from the standard of care when they discharged Ms. Renaud without identifying the cause of her functional deficits and correcting them.

40. As a result of these departures from the standard of care, Ms. Renaud's fusion failed and needed to be completely revised and required multiple additional procedures.

41. Ms. Renaud also underwent many months of physical, occupational, speech and swallowing rehabilitation. Ms. Renaud is still disabled and continues to have residual

weakness in her extremities and lives in constant debilitating pain. She has been unable to regain range of motion in her neck and is unable to meaningfully look up, down, left or right. She suffers from daily headaches from the moment she wakes up until she falls asleep. She is numb from the back of her head to the bottom of her buttocks. As a result, she often experiences incontinence and is unable to experience any sense of sexual intimacy with her husband.

42. Ms. Renaud relies on her husband to care for her, dress her, bathe her, and cook a soft diet for her. She requires a walker to be mobile and is unable to safely use stairs or even enjoy a book because she cannot look down.

43. Had Dr. Rachlin complied with the standard of care and used the appropriate instrumentation, Ms. Renaud's original procedure would have been successful and her ongoing poor condition could have been avoided.

## **COUNT ONE – NEGLIGENCE – DR. RACHLIN AND THE UNITED STATES OF AMERICA**

44. The Plaintiffs repeat and reallege the allegations of all above Paragraphs as if each were separately and specifically set forth herein.

45. Agents, employees and/or servants of the United States, including Dr. Rachlin, held themselves out as qualified and skilled in the treatment of various illnesses and conditions and, in particular, represented to the Plaintiff, Ms. Renaud, that they were knowledgeable, competent, and qualified to diagnose and treat her in or about June 2020 to October 2020.

46. The physicians and medical professionals who provided treatment to plaintiffs in their capacity as employees of the VA Boston Healthcare System were, at all times relevant herein, acting as agents, servants and/or employees of the defendant United States of America.

47. In providing counseling, care, treatment, and advice to plaintiffs, agents, servants and/or employees of the United States of America, including Dr. Rachlin, were negligent in failing to exercise that degree of skill, care, and diligence that is exercised by the average qualified practitioner engaged in practice at a professional level such as that in which they were then engaged.

48. Among other things, the agents, servants and/or employees, including Dr. Rachlin, while acting within the scope of their employment, departed from the standard of care in failing to properly use the AERO – C Cervical Cage System and discharging plaintiff without identifying the cause of her functional deficits and correcting them.

49. As a direct and proximate result of the defendants' conduct, plaintiff suffered and continues to suffer personal injury, disfigurement, disability and scarring, and extreme emotional and psychological distress, among other damages including medical expenses and loss of earning capacity.

50. As a direct and proximate result of the defendants' conduct plaintiff Randy Smith suffered a loss of consortium.

## **COUNT TWO – LACK OF INFORMED CONSENT – DR. RACHLIN AND THE UNITED STATES OF AMERICA**

51. The Plaintiffs repeat and reallege the allegations of all above Paragraphs as if each were separately and specifically set forth herein.

52. Agents, employees and/or servants of the United States, including Dr. Rachlin, held themselves out as qualified and skilled in the treatment of various illnesses and conditions and, in particular, represented to the Plaintiff, Ms. Renaud, that they were knowledgeable, competent, and qualified to diagnose and treat her in or about June 2020 to October 2020.

53. The physicians and medical professionals who provided treatment to plaintiffs in their capacity as employees of the VA Boston Healthcare System were, at all times relevant herein, acting as agents, servants and/or employees of the defendant United States of America.

54. In or about June 2020 to October 2020, average qualified members of the medical profession practicing the Defendants' specialty knew or should have known of the risks, potential consequences, and alternatives to the Defendants' choice of treatment of Ms. Renaud.

55. In or about June 2020 to October 2020, agents, employees and/or servants of the United States, including Dr. Rachlin, knew, or should have known, of the risks, potential consequences, and alternatives to the Defendant's choice of treatment of Ms. Renaud.

56. In or about June 2020 to October 2020, agents, employees and/or servants of the United States, including Dr. Rachlin, did not inform the Plaintiffs of the alternatives to and risks and potential consequences of the Defendant's choice of treatment of Ms. Renaud.

57. If agents, employees and/or servants of the United States, including Dr. Rachlin, had informed the Plaintiffs of the alternatives to and risks and potential consequences of the Defendant's choice of treatment of Ms. Renaud, neither the Plaintiffs nor reasonable people in their position would have elected the Defendant's choice of treatment.

58. The alternatives to and the risks and potential consequences of the Defendant's choice of treatment were material to a decision by the Plaintiff and a reasonable person in her position as to whether to undergo the Defendants' choice of treatment.

59. As a direct and proximate result of the defendants' conduct, plaintiff suffered and continues to suffer personal injury, disfigurement, disability and scarring, and extreme emotional and psychological distress, among other damages including medical expenses and loss of earning capacity.

60. As a direct and proximate result of the defendants' conduct plaintiff Randy Smith suffered a loss of consortium.

**COUNT THREE – FEDERAL TORTS CLAIM ACT - UNITED STATES OF AMERICA**

61. The Plaintiffs repeat and reallege the allegations of all above Paragraphs as if each were separately and specifically set forth herein.

62. Agents, employees and/or servants of the United States held themselves out as qualified and skilled in the treatment of various illnesses and conditions and, in particular, represented to the Plaintiff, Ms. Renaud, that they were knowledgeable, competent, and qualified to diagnose and treat her in or about June 2020 to October 2020.

63. The physicians and medical professionals who provided treatment to plaintiffs in their capacity as employees of the VA Boston Healthcare System were, at all times relevant herein, acting as agents, servants and/or employees of the defendant United States of America.

64. In providing counseling, care, treatment, and advice to plaintiffs, the agents, servants and/or employees, while acting within the scope of their employment, failed to exercise that degree of skill, care, and diligence that is exercised by the average qualified practitioner engaged in practice at a professional level such as that in which they were then engaged.

65. Among other things, the agents, servants and/or employees, while acting within the scope of their employment, departed from the standard of care in failing to properly use the AERO – C Cervical Cage System and discharging plaintiff without identifying the cause of her functional deficits and correcting them.

66. In or about June 2020 to October 2020, average qualified members of the medical profession practicing the Defendants' specialty knew or should have known of the risks, potential consequences, and alternatives to the Defendant's choice of treatment of Ms. Renaud.

67. In or about June 2020 to October 2020, agents, employees and/or servants of the United States, including Dr. Rachlin, knew, or should have known, of the risks, potential consequences, and alternatives to the Defendant's choice of treatment of Ms. Renaud.

68. In or about June 2020 to October 2020, agents, employees and/or servants of the United States, including Dr. Rachlin, did not inform the Plaintiffs of the alternatives to and risks and potential consequences of the Defendant's choice of treatment of Ms. Renaud.

69. If agents, employees and/or servants of the United States, including Dr. Rachlin, had informed the Plaintiffs of the alternatives to and risks and potential consequences of the

7

        Defendant's choice of treatment of Ms. Renaud, neither the Plaintiffs nor reasonable people in their position would have elected the Defendant's choice of treatment.

70.    The alternatives to and the risks and potential consequences of the Defendant's choice of treatment were material to a decision by the Plaintiff and a reasonable person in her position as to whether to undergo the Defendants' choice of treatment.

71.    As a direct and proximate result of the defendants' conduct, plaintiffs suffered and continues to suffer personal injury, disfigurement, disability and scarring, and extreme emotional and psychological distress, among other damages including medical expenses and loss of earning capacity.

72.    As a direct and proximate result of the defendants' conduct plaintiff Randy Smith suffered a loss of consortium.

        **WHEREFORE**, the plaintiff requests that this Court grant the following relief:

a)   That judgment be entered against the defendants, jointly and severally, for damages, plus interest and costs, incurred by plaintiffs in the amount of no less than $10,000,000.

b)   Any other relief that the Court deems appropriate.

**PLAINTIFFS CLAIM A TRIAL BY JURY.**

        Plaintiffs,
        By their attorneys:

Date:

        /s/ Scott M. Heidorn
        Scott M. Heidorn, BBO# 661787
        Julia M. Shinkwin, BBO# 693378
        Bergstresser & Pollock PC
        52 Temple Place
        Boston, MA 02111
        (617) 682-9211
        (617) 451-1070 – FAX

# EXHIBIT 1



Clyde D. Bergstresser
clyde@bergstresser.com

Russell X. Pollock*
russ@bergstresser.com

Scott M. Heidorn
scott@bergstresser.com

Kerry Paul Choi
kerry@bergstresser.com

Richard J. Zabbo**
rich@bergstresser.com

Julia M. Myers***
julia@bergstresser.com

*Also admitted in NY, CT, RI and NH
**Also admitted in RI
***Also admitted in CT

Karen M. Reilly, Nurse - Paralegal
karen@bergstresser.com

March 9, 2022

**<u>VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED</u>**

Department of Veterans Affairs
Office of General Counsel
Torts Law Group
810 Vermont Avenue, NW
Washington, DC 20420

      RE:    <u>Federal Tort Claims Act (FTCA) Presentment</u>

Dear Sir or Madam:

      This firm represents Kimberly Renaud and Randy Smith in this claim pursuant to the Federal Tort Claims Act (FTCA) for compensation for physical and emotional injuries and loss of consortium suffered as a result of negligence by employees and/or agents of West Roxbury VA Medical Center including, without limitation, Jacob Rachlin, MD. I am enclosing a letter of representation from Kimberly and Randy Smith confirming that this firm represents them. Please also see the enclosed Standard Form 95.

      By way of background, Kimberly Renaud is a 52 year old woman who is a disabled Navy Veteran. Beginning in June 2020, Ms. Renaud began complaining of bilateral numbness in her hands and feet. The symptoms progressed, extending into her arms and legs and the pain became severe in August 2020. She was diagnosed with cervical myelopathy. Imaging showed cervical spondylosis with severe spinal cord compression at C6-7 with increased T2 signal in the cord. In addition, there was moderate spinal cord compression about the C4-5 and C5-6 levels.

BERGSTRESSER
& POLLOCK LLC

Ms. Renaud was seen by Jacob Rachlin, MD at the West Roxbury VA Medical Center who recommended a three-level anterior cervical discectomy and fusion at C4-5, C5-6, C6-7. On 09/10/20, Dr. Rachlin performed the procedure, using a Stryker Spine AERO®-C Cervical Cage at C4-5, C5-6, C6-7. According to the FDA literature and approval related to this device, the indications for its use is only at *one level*. The use of the device at multiple levels represents a departure of the standard of care.

Despite Dr. Rachlin's assertions that the procedure was apparently uncomplicated, Ms. Renaud appreciated new right sided weakness, which was not present prior to the surgery. She also complained of worsening left leg weakness where her leg would buckle when walking. After complaining of these new functional deficits, x-rays were performed on 09/11/20 and 09/12/20 which showed good alignment and well seated instrumentation, but noted that one of the s wing arms may have fractures.

Despite ongoing functional deficits, on 09/15/20, Ms. Renaud was transferred to inpatient rehabilitation at the West Roxbury VA where she remained until 09/23/20. A CT on 09/18/20 showed post-surgical changes at C4-C5 through C6-C7 and abnormal angulation with posterior tilting of C6-C7 intervertebral spacer device. On 09/23/20 she was treated for a UTI and her complaints of urinary incontinence were wrongfully ascribed to that. On 09/24/20 she also complainedrrr of numbness in her hands and difficulty chewing and swallowing.

A few days after returning home, on 09/29/20, Ms. Renaud presented to the West Roxbury VA Emergency Department and reported having urinary and bowel incontinence and complaints of left face, arm, leg and buttock numbness. A head CT ruled out concern over TIA. Ms. Renaud's symptoms again were not properly ascribed to her recent surgical procedure and the possibility of failed hardware.

On 10/07/20, Ms. Renaud was seen for her one month follow up by Dr. Rachlin and a PA student where she reported feeling well, but still had persistent left leg numbness. Imaging wasn't ready at that time. Ms. Renaud again presented to the VA on 10/13/20 with complaints of incontinence and was admitted. On 10/14/20 there are notes of reported fecal incontinence when being moved from the ED and having the urge to urinate without having to which was concerning for cord compression. Plain films were done which showed C4-5 and C5-6 implants in good position but it was hard to visualize the C6-7 level. It was determined that no surgical intervention was warranted at that time as they believed the left leg numbness was unrelated to the cervical spondylosis and she was discharged on 10/17/20. During this admission she had another fall related to her leg numbness.

Ms. Renaud decided to pursue another opinion regarding her continued pain, numbness and difficulty swallowing at Massachusetts General Hospital. On 11/3/20 John H. Shin, MD determined that surgery was urgent and that Ms. Renaud required a two-stage surgical procedure. Due to Dr. Rachlin's negligent decision to use the AERO – C Cervical Cage System at multiple levels during Ms. Renaud 09/10/20 surgery, a use for the device that is not approved by the FDA, the fusion failed and had to be completely revised.



On 11/5/20, Dr. Shin performed an anterior cervical corpectomy at C5 C6 C7 complicated by a left vertebral transection with sacrifice. Dr. Shin's operative note indicates there was a clear mechanical failure of all interbody devices as there was significant motion across the interbody spaces. Exploration showed that there were no signs of bone integration or osseus fusion.

Decompression was performed and there was severe ventral compression to the spinal cord and thecal sac primarily at the C6-7 level. There was clear deformity and indentation of the thecal sac from the repulsed nature of the vertebral body and interbody spacer at C6-7 with dense fibrous adhesions causing ventral compression of the spinal cord at this level. The next day on 11/6/20, Dr. Shin went on to perform the posterior cervical thoracic c instrumented fusion from C2-T2 with cervical decompression from C4-C7 with placement of one hemovac.

Following the two-part surgical procedure, Ms. Renaud was in extreme pain and also suffered from difficulty speaking and swallowing. She was discharged on 11/12/20 with home health services, but returned to MGH on 11/17/20 due to aspiration pneumonia resulting from her difficulty swallowing. Imaging showed an immobile right vocal fold in the setting of multiple cervical and thoracic spinal surgeries. On 11/21/20 Ms. Renaud underwent a percutaneous endoscopic gastrostomy surgical procedure so that she could obtain the appropriate nutrients without aspirating over the next several months. Although Ms. Renaud's PEG tube was removed on 03/01/2021, she still has difficulty eating solid foods and taking pills without choking.

Despite Dr. Shin's two-part procedure removing the improper and failed hardware used by Dr. Rachlin, Ms. Renaud continued to suffer from ongoing neck pain radiating to her suboccipital region and up to the vertex, longstanding numbness in her left leg and occasional left leg giving way.

On 06/30/21, Ms. Renaud required yet another procedure which Dr. Shin performed to address Ms. Renaud's pseudarthrosis after fusion, which included placement of new C2 pedicle screws, C2 translaminar screw into left lamina, and re-fusion C2-T4. This procedure is also related to the negligent use of the AERO – C Cervical Cage System during Ms. Renaud 09/10/20 surgery.

I am enclosing a flash drive which includes Ms. Renaud's medical records and the West Roxbury VA Medical Center and Massachusetts General Hospital as well as imaging studies which are on cds. I have also included literature from the Department of Health and Human services related to the FDA approval of the use of the AERO – C Cervical Cage System *at one level*.



Each of the providers that cared for Ms. Renaud at the West Roxbury VA Medical Center, including but not limited to Dr. Rachlin, departed from the standard of care when they chose to use the Stryker Spine AERO®-C Cervical Cage for Ms. Renaud's C4-5, C5-6, C6-7 anterior cervical discectomy and fusion. Using this device is ill advised at contiguous levels. It is appropriately used only at one level and in fact is only approved by the FDA for use at one level. Dr. Rachlin and his supporting staff violated not only the standard of care when using this device on Ms. Renaud's multi-level discectomy and fusion, but also violated the approved use by the FDA. Dr. Rachlin and his supporting staff also departed from the standard of care when they discharged Ms. Renaud without identifying the cause of her functional deficits and correcting them. As a result of these departures from the standard of care, Ms. Renaud's fusion failed and needed to be completely revised.

Today, despite multiple revision surgeries and many months of physical, occupational, speech and swallowing rehabilitation, Ms. Renaud is still disabled and continues to have residual weakness in her extremities. She lives in constant debilitating pain. She has been unable to regain range of motion in her neck and is unable to meaningfully look up, down, left or right. She suffers from daily headaches from the moment she wakes up until she falls asleep. She is numb from the back of her head to the bottom of her buttocks. As a result, she often experiences incontinence and is unable to experience any sense of intimacy with her husband. Instead Ms. Renaud relies on her husband to care for her, dress her, bath her, cook a soft diet for her. She requires a walker to be mobile and is unable to safely use stairs or even read a book because she cannot look down. Had Dr. Rachlin used the appropriate instrumentation, Ms. Renaud's ongoing poor condition could have been avoided.

On behalf of Ms. Renaud and her husband, Randy Smith, I make a claim of $10,000,000. Thank you for your attention to this matter. If I can answer any questions or provide any further information please do not hesitate to contact me.

Very Truly Yours,

*/s/ Julia Myers Shinkwin*

Clyde D. Bergstresser
Scott Heidorn
Julia Myers Shinkwin


Encl.

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Office of the General Counsel General Law Division<br>Department of Health & Human Services<br>200 Independence Ave., S.W., Room 713-F<br>Washington, DC 20201 | Kimberly Renaud and Randy Smith<br>79 Fairview Park Road<br>Sturbridge, MA 01566 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY ☒ CIVILIAN | 4. DATE OF BIRTH<br>10/06/1969 | 5. MARITAL STATUS<br>Married | 6. DATE AND DAY OF ACCIDENT<br>09/10/2020 | 7. TIME (A.M. OR P.M.)<br>NA |
|---|---|---|---|---|

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

This is a medical malpractice matter arising out of the improper use of a Stryker Spine AERO®-C Cervical Cage by Jacob Rachlin, MD and other medical care providers at the West Roxbury VA Medical Center resulting in failure of hardware, multiple additional surgical procedures, permanent physical injuries, pain, suffering, and a loss of consortium. Their departures of the standard of care include improper use of the Stryker Spine AERO®-C Cervical Cage at contiguous levels among other departures. For further details, please see the enclosed Notice of Claim Letter.

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

NA

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

NA

10. PERSONAL INJURY/WRONGFUL DEATH

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

As a result of the providers' departures from the standard of care, Ms. Renaud's fusion completely failed and has since required three corrective surgeries and may need more in the future. She has experienced pain, suffering, disfigurement and medical expenses.

11. WITNESSES

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Kimberly Renaud and Randy Smith | 79 Fairview Park Road, Sturbridge, MA 01566 |

12. (See instructions on reverse). AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| | 10,000,000 | | 10,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side).<br>*Kimberly Renaud* *Randy A. Smith* | 13b. PHONE NUMBER OF PERSON SIGNING FORM<br>774-334-0998 | 14. DATE OF SIGNATURE<br>02/24/2022 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

Kimberly Renaud and Randy Smith
79 Fairview Park Road
Sturbridge, MA 01566

To Whom It May Concern:

By signing this document, we, Kimberly Renaud and Randy Smith, do affirm and assent that Attorneys Clyde D. Bergstresser, Scott M. Heidorn, and Julia M. Shinkwin, Bergstresser & Pollock, PC, 52 Temple Place, 4th Floor, Boston, Massachusetts 02111 represent us in all claims arising out of the medical care rendered to Kimberly Renaud at the West Roxbury VA Medical Center, including making a demand pursuant to the Federal Torts Claim Act:

Date: March 1, 2022

*Kimberly Renaud* (signature)
Kimberly Renaud

Date: March 1, 2022

*Randy Smith* (signature)
Randy Smith